# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **I.K. and E.K.**

**No. 18-0889** (Fayette County 18-JA-3 and 18-JA-4)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.W., by counsel Marc A. Moore, appeals the Circuit Court of Fayette County's September 5, 2018, order terminating her parental rights to I.K. and E.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Joseph M. Mosko, filed a response on behalf of the children, also in support of the circuit court's order, and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner and the father in February of 2018, after receiving referrals regarding drug abuse and domestic violence in petitioner's home.[2] During the resulting investigation, Child Protective Services ("CPS") workers attempted to reach petitioner at the home, but she refused to open the door. The children were interviewed by the local Child Advocacy Center, and then-four-year-old E.K. disclosed that petitioner's boyfriend punched him in the face and that petitioner "hits [her boyfriend] in the face." Moreover, the child disclosed seeing drugs and needles while at his aunt's house. Days later, when

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner and the father were separated and the children reportedly lived mainly with the father. The father was instructed to not allow petitioner to have custody the children during the DHHR's investigation into the referrals.

CPS workers were eventually able to locate petitioner at the home, she appeared "disconnected" and did not understand the severity of the allegations. The DHHR concluded that petitioner had a substance abuse problem that impaired her ability to care for the children and exposed the children to domestic violence. The DHHR alleged that petitioner's parental rights to an older child were terminated in 2010.

Later in February of 2018, the circuit court held a preliminary hearing. Petitioner failed to attend, but was represented by counsel. The circuit court found probable cause that the children were neglected and/or abused and ordered that petitioner have no visitation with the children.

The circuit court held an adjudicatory hearing in April of 2018. Petitioner failed to attend but was represented by counsel. After considering the children's disclosures regarding domestic violence in the home and petitioner's drug use, the circuit court found that there was clear and convincing evidence that petitioner had abused or neglected her children and adjudicated her as an abusing parent. The circuit court also ordered that petitioner address her issues with substance abuse and domestic violence.

In June of 2017, the circuit court held a dispositional hearing. Petitioner again failed to attend but was represented by counsel, who proffered that petitioner had entered a drug abuse treatment program. As such, the circuit court continued the hearing. Subsequently, a multidisciplinary team ("MDT") meeting was held and the members were advised that, although petitioner entered a treatment program, she left the program against medical advice approximately nine days later. The dispositional hearing was reconvened in July of 2018. Counsel for petitioner moved the circuit court to continue the hearing and proffered that petitioner, who was absent, "sa[id] she will enter rehabilitation." The circuit court granted the motion "to see i[f] she enters the rehabilitation and remains in rehabilitation" and continued the hearing.

The circuit court reconvened the dispositional hearing for a final time in August of 2018. Petitioner failed to attend but was represented by counsel. At the close of the hearing, the circuit court ultimately found that petitioner had abandoned her children by failing to appear for the proceedings, despite knowing that her parental rights were at stake. Further, petitioner showed a complete lack of ability to parent the children and failed to address her substance abuse problem. As such, the circuit court determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests. It is from the September 5, 2018, dispositional order terminating her parental rights that petitioner appeals.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

_____

[3]The father successfully completed his improvement period and the petition against him was dismissed. The permanency plan for the children is to remain in the father's care.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights, rather than "extending her improvement period" in light of her stated intent to enter into and complete a drug abuse treatment program. According to petitioner, she completed the most difficult of the drug abuse treatment program in her first nine days. Further, she alleges that "[i]t is common for individuals with substance abuse problems to need more than one treatment to successfully overcome their condition" and petitioner avers that, because she was not allowed the opportunity to enroll a second time, her parental rights should not have been terminated. We disagree.

We first note that the circuit court could not have erred in "failing" to extend petitioner's improvement period as she was never granted one. Pursuant to West Virginia Code § 49-4-610, a circuit court may grant an improvement period when the parent "files a written motion requesting the improvement period" and "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Here, the record shows that petitioner failed to request an improvement period, in writing or otherwise, and, therefore, was never granted one. Indeed, she failed to attend or participate in any hearings throughout the underlying proceedings. Based on this evidence, we find that the circuit court did not err.

We further find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(2), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] willfully refused or [is] presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control." Moreover, West Virginia Code § 49-4-604(c)(3) sets forth another situation wherein the parent has

> not responded to . . . a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

*Id.*

Here, petitioner failed to participate in any aspect of the proceedings below. She failed to attend a single hearing or MDT meeting and did not make any effort to develop a reasonable family case plan designed to lead to her children's return to her custody. While petitioner argues that she would have successfully completed a drug abuse treatment program had she been given more time, her words ring hollow in light of the circuit court's continuance of the dispositional hearing on two separate occasions to allow petitioner to do just that. However, despite having been granted this additional time, petitioner left a treatment program against medical advice after only nine days and never re-entered another program. Moreover, petitioner's complete absence from the proceedings meant that she had no visitation with her children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). As such, it is clear that petitioner's failure to participate in the proceedings rendered her unable to develop a family case plan, and she failed to address her drug abuse through rehabilitative efforts. Based on the foregoing, we agree with the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 5, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 24, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

4